## A00A2470. JORDAN v. TRI COUNTY AG, INC.

(546 SE2d 528)

BLACKBURN, Chief Judge.

In this action for repayment of a debt, Wiley Jordan appeals the trial court's denial of his motion for summary judgment, contending that he is not liable to Tri County Ag, Inc. for funds borrowed by Jack Daniel Garrett pursuant to a $200,000 line of credit. Jordan also appeals the trial court's grant of partial summary judgment to Tri County, contending that, even if he were liable under the line of credit agreement: (1) Tri County misapplied payments and credits on the account; (2) he cannot be held responsible for amounts lent to Garrett which exceeded the $200,000 line of credit limit; (3) Tri County charged usurious interest rates and, as such, forfeited its right to collect any interest on past due amounts; and (4) Tri County violated the Racketeer Influenced & Corrupt Organizations Act and, therefore, is not entitled to enforce the credit agreement. For the reasons set forth below, we affirm in part and reverse in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

The evidence shows that Tri County sold farming supplies to Garrett in 1996. That year, Garrett's crops failed, and, as a result, he was unable to pay all of his farming bills, including Tri County's bill. Due to these credit problems, the Bank of Dawson County refused Garrett's request for an operating loan in 1997, and, after exhausting

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

other possibilities, Garrett approached Jordan, a friend and business acquaintance, for assistance.

An entrepreneur familiar with rural real estate transactions, crop production, and crop sales, Jordan agreed to assist Garrett in obtaining farm loans if Garrett, in return, (1) transferred an interest to Jordan in a certain real estate transaction and (2) agreed to sell his peanut crop through an organization in which Jordan held an interest. In addition, as Garrett's landlord on some farming property, Jordan was motivated to assist Garrett in order to collect back rent on the leased property.

As part of their business arrangement, Jordan agreed to obtain a loan from the Bank of Dawson County in the name of his partnership, J & W Farms, and then loan the funds to Garrett to grow his crops. Because the bank required that the loan be secured by the crops, Garrett assigned the leases of farming property he held to J & W which, in turn, pledged the crops to the bank as collateral. Thereafter, Jordan transferred the proceeds of this loan to Garrett throughout the 1997 farming season.

That same year, Garrett also requested a $200,000 line of credit from Tri County in order to obtain seed, fertilizer, and other farming supplies. Tri County initially refused due to Garrett's past due account and bad credit history. Garrett then informed Tri County that he had assigned his crops to J & W and that Jordan had agreed to allow Garrett to operate under the J & W name. After learning about the business deal between Garrett and Jordan, Tri County decided that it would extend a line of credit to Garrett only if both Garrett and Jordan were responsible for the debt. In addition, based upon Garrett's explanation of his business dealings with Jordan, Tri County believed that Garrett and Jordan, through J & W Farms, were acting as partners, and Tri County, being aware of Jordan's reputation as a savvy businessman in the community, was more willing to extend credit with this understanding.

At that time, Garrett, without assistance of an attorney, drafted a line of credit agreement "to be utilized by GARRETT personally and/or farming as J & W FARMS for the 1997 crop year." Among other things, the agreement extended to Tri County a first lien on Garrett's corn crop and a second lien on cotton and peanut crops produced under the name of J & W. Garrett signed this agreement in his individual capacity, and Jordan signed the agreement under the heading "J & W Farms."

Following the 1997 crop season, Garrett again had insufficient funds to pay all of his debts, including the amount due on the 1997 line of credit with Tri County. As a result, Tri County brought suit against Garrett and Jordan to recover the balance due under the credit agreement along with interest and attorney fees. Jordan sub-

sequently filed a motion for summary judgment contending that he had no obligations to repay the line of credit, which the trial court denied. Tri County filed a motion for partial summary judgment regarding a number of Jordan's defenses, which the trial court granted. Jordan now appeals these rulings.

1. In his first enumeration of error, Jordan contends that the trial court erred by denying his motion for summary judgment, contending that there is no question of fact regarding his obligation under the contract. We disagree.

Viewed in the light most favorable to Tri County, the evidence supports the trial court's ruling that a question of fact remains regarding Jordan's obligations under the credit agreement. Jordan contends that nothing contained within the line of credit agreement obligates him to repay money borrowed by Garrett. The agreement, however, contains no terms regarding repayment by anyone and, as such, appears to be materially incomplete on its face.

As a general rule,

> parol evidence is inadmissible to add to, take from, vary or contradict the terms of a written instrument. However, if there is an ambiguity, latent or patent, it may be explained; so if a part of a contract only is reduced to writing . . . , and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible. If the writing appears on its face to be an incomplete contract and if the parol evidence offered is consistent with and not contradictory of the terms of the written instrument, then the parol evidence is admissible to complete the agreement between the parties. A party is entitled to prove the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transactions between them.

(Citations and punctuation omitted.) *Doyle v. Estes Heating &c.*[2] The line of credit agreement, which was drafted by Garrett without the aid of an attorney, makes no reference to payments or obligations to pay the line of credit. It is axiomatic that such provisions are integral to any credit agreement, and it cannot be the intent of the parties herein that no such terms existed. Accordingly, it is appropriate in this instance for the trial court to consider parol evidence

---

[2] *Doyle v. Estes Heating &c.*, 173 Ga. App. 491, 493 (2) (326 SE2d 846) (1985).

regarding the terms of the agreement, and based on the evidence of Jordan's business relationship with Garrett, testimony of Tri County officers that they were led to believe that Garrett and Jordan were partners, and Jordan's signature on the agreement, the trial court properly denied Jordan's motion for summary judgment.

2. Jordan contends that the trial court erred by granting summary judgment to Tri County regarding his defense that Tri County "misapplied funds made in payment on the account under the letter of credit, and . . . misapplied credits."

Jordan first argues that Tri County misapplied a $25,000 payment to satisfy a portion of Garrett's 1996 debt rather than the debt incurred under the 1997 line of credit. This argument, however, is unfounded. In his deposition, Jordan testified that he understood that the $25,000 payment would be applied to a "back account," not the 1997 line of credit.

Jordan also argues that, pursuant to the agreement, Tri County was required to extend certain credits to Garrett. In relevant part, the agreement provides:

> TRI-COUNTY agrees to pay the sum of $15,000 to Case Credit on behalf of GARRETT to be credited to that certain account with Case Credit in the name of JACK DANIEL GARRETT. Said payment shall be made no later than August 15, 1997. TRI-COUNTY further agrees to pay the sum of $10,000 directly to GARRETT on September 1, 1997 as an advance towards 1997 operating expenses.

Jordan apparently argues that these credits were to be paid unconditionally to Garrett, without obligation for repayment. Nothing in the record supports Jordan's contention, and the trial court did not err in granting Tri County's request for summary judgment on this claim.

3. Jordan contends that the trial court erred by granting summary judgment to Tri County regarding his claim that any obligation he might have under the agreement has been satisfied because Tri County lent Garrett more than $200,000 and more than $200,000 had been paid on the account.

Black's Law Dictionary (6th ed.) defines a line of credit as:

> A margin or fixed limit of credit granted by one to another, typically from bank, retailer, or credit card issuer to customer, to the full extent of which the latter may avail himself in his dealings with the former, but which he must not exceed; usually intended to cover a series of transactions, in which case, when the customer's line of credit is nearly or

> quite exhausted, he is expected to reduce his indebtedness by payments before drawing upon it further.

In other words, the credit limit is the maximum amount which a customer may borrow at any one time. A customer, however, may borrow far more than the limit in the aggregate over time, as long as periodic payments are made on the account. Therefore, to the extent that Jordan argues that he has no obligation under the agreement because Garrett has made payments to Tri County *over time* exceeding $200,000, his contention misconstrues the nature of a line of credit and has no merit.

However, to the extent that Jordan contends that Garrett was allowed to exceed his credit limit by having an outstanding balance of *more than* $200,000 at any one given time, questions of fact regarding Jordan's liability remain. Because it is unclear in what capacity Jordan executed the agreement and because the agreement is incomplete with regard to payment obligations, Jordan may be entitled to set-offs for damages for breach of the contract by Tri County. See OCGA § 13-7-1. As such, Tri County is not entitled to summary judgment on Jordan's defense that he may not be liable for the repayment of money loaned to Garrett in excess of the credit limit under the agreement. Accordingly, we must reverse the trial court's grant of summary judgment to Tri County on this particular issue.

4. Jordan contends that the trial court erred by granting Tri County's motion for summary judgment with regard to his claim that Tri County forfeited its rights to any interest accrued under the contract after conveying usurious invoices.

The record shows that, during the pendency of Garrett's account with Tri County, Tri County used a computer billing program which erroneously charged its customers interest both on unpaid balances as well as unpaid interest. Jordan contends that Tri County knowingly and intentionally used this method of billing and is, therefore, guilty of usury. Jordan further contends that, because Tri County knowingly charged usurious rates of interest, it has forfeited all interest under the agreement.

In support of this argument, Jordan cites numerous cases in which there was evidence that the creditors involved intentionally charged usurious rates of interest. Here, on the other hand, the inappropriate interest charges were the result of faulty software, not the action of the creditor. The charging error was caused by a glitch in the software itself, not an intentional act of Tri County. The evidence is clear that Tri County did not know of, or intend for, the software to calculate interest upon interest and that the error was in the software itself as a result of a development error. The record, there-

fore, shows that the billing error originated in the programming of the software and was not a billing method intended to be employed by Tri County. Moreover, once Tri County discovered the programming error, it discontinued use of the software, recalculated the accounts of its customers, and made reparations where necessary. Based on this evidence, the trial court appropriately granted Tri County's request for summary judgment with regard to Jordan's claim that it had forfeited its right to all interest under the agreement.

5. Finally, Jordan contends that the trial court erred by granting summary judgment to Tri County regarding his claim that Tri County violated the Georgia RICO Act by knowingly employing a scheme to charge usurious interest. We disagree.

OCGA § 16-14-4 (a) provides:

> It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

In this case, the activity proscribed is the acquisition of usurious interest through a "pattern of racketeering activity."

> The act further provides that "pattern" means engaging in at least two incidents of racketeering activity. OCGA § 16-14-3 (2). Finally, "racketeering activity" is defined to mean the commission of a crime in any of thirty-one specified categories of offenses (known as predicate offenses).

*State of Ga. v. Shearson Lehman Bros.*[3] The two predicate acts alleged by Jordan are mail fraud and theft by conversion. Jordan contends that Tri County committed mail fraud by sending invoices through the U. S. mail to perpetuate a scheme to collect usurious interest. He contends that Tri County committed theft by misapplying the $25,000 payment made by Jordan discussed in Division 2.

As discussed previously, the record does not support his contention either that Tri County knowingly and intentionally charged usurious interest or that Tri County converted the $25,000 payment. As discussed in Division 4, the evidence shows that the inappropriate interest charges made by Tri County were the result of a programming error in software used by the bank. This programming error

---

[3] *State of Ga. v. Shearson Lehman Bros.*, 188 Ga. App. 120, 121 (2) (372 SE2d 276) (1988).

was not requested by Tri County, and it had no prior knowledge of this problem. As such, there is no evidence that Tri County intentionally charged usurious interest. With regard to Jordan's conversion accusation, as discussed in Division 2, nothing in the record supports Jordan's contention that Tri County misapplied a $25,000 payment. Therefore, neither of the predicate acts alleged by Jordan is supported by the record in this case, and the trial court appropriately granted Tri County's motion for summary judgment with regard to Jordan's claims of RICO violations.

*Judgment affirmed in part and reversed in part. Eldridge and Barnes, JJ., concur.*

DECIDED FEBRUARY 26, 2001 —
RECONSIDERATION DENIED MARCH 20, 2001 — ■■■■■■■■

*Divine, Dorough & Sizemore, Kermit S. Dorough, Jr., William J. Sizemore*, for appellant.

*King & Spalding, Benjamin F. Easterlin IV, Shannon F. Cox*, for appellee.