A03A1994. REICHMAN v. SOUTHERN EAR, NOSE & THROAT SURGEONS, P.C. et al.
(598 SE2d 12)

MILLER, Judge.

Dr. Owen Reichman sued Southern Ear, Nose & Throat Surgeons, P.C., (SENT) for fraud and breach of contract when disputes arose regarding his compensation after he voluntarily terminated his employment with SENT. Reichman also sued Medical Management Associates, Inc. (MMA), the management company that negotiated the employment contract between SENT and Reichman, for fraud. Both companies moved for summary judgment, which was granted to defendants as to all of Reichman's claims. Since there was no evidence to create a genuine issue of material fact with respect to Reichman's claims against MMA, but evidence supports one of Reichman's breach of contract claims against SENT, we affirm in part and reverse in part.

On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Holbrook v. Stansell,* 254 Ga. App. 553-554 (562 SE2d 731) (2002).

---

[5] *Wilburn v. State,* 199 Ga. App. 667, 669 (3) (405 SE2d 889) (1991).
[6] *Mowery v. State,* 234 Ga. App. 801, 802-803 (2) (507 SE2d 821) (1998).

So viewed, the evidence reveals that in March 1999, Reichman entered into an employment agreement with SENT, pursuant to which Reichman agreed to provide medical services to SENT patients. Under the agreement, all fees that Reichman charged for services rendered to SENT patients were collected by and became the property of SENT, and SENT paid Reichman a percentage of the collected fees after making certain deductions. Specifically, the agreement provided in Item V, subsection (a):

In consideration of the services provided to SENT by Physician under the Initial Term of this Agreement, SENT agrees to pay Physician compensation ("Physician Compensation") in accordance with the following compensation formula ("Compensation Formula"): (i) one, minus the SENT Overhead Factor (as defined in this Item V), minus an administrative fee of five percent (5%), which amount is then multiplied by the monthly collections for all medical, diagnostic and surgical procedures personally performed by Physician. The formula expressed in this Item V is set forth as follows: (1 - the SENT Overhead Factor) - 5% x Physician's net monthly collections = Physician Compensation. Physician shall receive ninety percent (90%) of the Physician Compensation calculated as provided herein on a monthly basis. The remaining ten percent (10%) of monthly compensation (the "Withhold") shall be retained by the Company and shall be paid to Physician at the end of the applicable term in connection with the reconciliation process described in subsection (b), below. . . . [T]he "SENT Overhead Factor" shall be calculated by dividing "SENT Overhead" during the applicable calendar year by SENT's net revenue during such year. "SENT Overhead" shall include, but shall not be limited to, staff salaries, benefits, taxes, rent, repairs and maintenance costs, legal, accounting and consulting fees, advertising, telephones, rental and/or usage fees for digital pagers and cellular telephones, office and medical supplies, other insurance costs and postage, but shall not include salaries and other compensation and benefits paid by SENT to or on behalf of physician employees of SENT.

The parties further agreed in Item V, subsection (b):

For the purposes of calculating compensation to be paid to Physician during the Initial Year, the SENT Overhead Factor shall be 60.5%, which is the SENT Overhead Factor for calendar year 1998. Physician and SENT agree that, at the

end of the Initial Term hereof, SENT will calculate its actual Overhead Factor for calendar year 1999, and Physician Compensation shall be recalculated based on the 1999 SENT Overhead Factor.

If Reichman received more compensation than he otherwise should have during the initial term of the agreement (based on a recalculation with a 1999 Overhead Factor that was larger than the 1998 Overhead Factor), Reichman would pay the difference to SENT. If it turned out that Reichman received less compensation than he otherwise should have (based on a recalculation with a 1999 Overhead Factor that was smaller than the 1998 Overhead Factor), SENT would pay Reichman the difference, with Reichman's ten percent monthly withholding being used as part of the reconciliation for such payment.

The agreement also provided that it could be terminated by either party with 90 days' notice. In the event of such termination, Reichman "shall be entitled to receive compensation due [him] through the effective date of termination, as calculated pursuant to the Compensation Formula."

When Reichman became displeased with his level of compensation, he gave timely notice to SENT that he was terminating his agreement and that December 15, 2000, would be his last day with SENT. Reichman believed that he was entitled to compensation for any fees generated by his work for SENT through and including his final day of employment. However, SENT took the position that it would only pay Reichman (pursuant to the Compensation Formula in the agreement) for any fees related to Reichman's services that SENT happened to *collect* prior to his last day. SENT believed that under the employment agreement, Reichman was not entitled to compensation relating to fees that he may have generated while working for SENT but that SENT did not collect until after December 15, 2000.

Reichman sued SENT, alleging, among other things, various breaches of the employment agreement by SENT, and alleging that SENT made certain misrepresentations to induce Reichman to enter into the employment agreement. Reichman also sued MMA, alleging that they made misrepresentations to induce Reichman to enter into the contract with SENT. The defendants moved for summary judgment, which motions were granted, and Reichman appeals.

1. Reichman contends that SENT breached the employment agreement by (1) refusing to compensate him after December 15, 2000, for any fees that he generated for SENT prior to December 15 but that SENT did not collect until after December 15, (2) failing to "credential" him with insurers in a timely manner, (3) failing to collect on an adequate percentage of the fees generated by his work

for SENT, and (4) adding an inappropriate item of "depreciation" to its calculation of the SENT Overhead Factor under the agreement. The record reveals that Reichman's second through fourth arguments are without merit, as the employment agreement does not contain any requirement that SENT "credential" Reichman with insurers or collect a certain percentage of his receivables; the agreement does not exclude depreciation from the calculation of overhead; and the agreement contains a comprehensive merger clause (expressly nullifying prior oral agreements) that would prevent Reichman from relying on any alleged oral representation that depreciation would be excluded from the overhead calculation. See, e.g., *First Data POS v. Willis*, 273 Ga. 792, 794 (1) (546 SE2d 781) (2001). However, as explained in more detail below, Reichman presents a valid argument that SENT breached the employment agreement by failing to pay him for fees he generated during his employment with SENT that were collected after his last day with SENT.

Here, Reichman's argument turns upon the construction of the contract, which construction involves a question of law for the court to resolve based on the intent of the parties as reflected in the agreement. See *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000); OCGA § 13-2-1. We review this issue de novo. *Deep Six, Inc.*, supra, 246 Ga. App. at 73 (2). First, we must determine if the contract language is ambiguous, and, if so, then we apply the appropriate rules of construction set forth in OCGA § 13-2-2. Id. If, after applying such rules, ambiguity remains, a jury must resolve the ambiguity. Id. Ambiguity exists where contract language is indistinct, duplicitous, or has an uncertain meaning. *Kuehn v. Selton & Assoc.*, 242 Ga. App. 662, 668 (7) (530 SE2d 787) (2000).

We hold that the contract language here is ambiguous. In the event of termination, the contract provides that Reichman "shall be entitled to receive compensation due [him] through the effective date of termination, as calculated pursuant to the Compensation Formula." However, the agreement does not go on to specifically define what is meant by the word "due." The contract provision could mean that Reichman is "due" to receive compensation that he has earned but for which he has not yet been paid, regardless of whether or not he is still working for SENT when the fees for such work are collected. On the other hand, the provision could also mean that Reichman is only "due" what money he is entitled to receive based on the compensation formula as it is applied to funds actually collected by SENT prior to Reichman's last day of employment.

At this point, we apply the rules of construction set forth in OCGA § 13-2-2 to resolve the existing ambiguity. Pursuant to OCGA § 13-2-2 (5) as judicially interpreted, where the construction of a contract is doubtful, the construction that goes most strongly against

the drafter of the agreement is to be preferred. *Hertz Equip. Rental Corp. v. Evans*, 260 Ga. 532, 533 (397 SE2d 692) (1990); see *Yates Paving & Grading Co. v. Bryan County*, 265 Ga. App. 578, 584 (594 SE2d 756) (2004). Since SENT drafted the agreement here, the contract should be read to mean that SENT is required to compensate Reichman for any fees that he generated while he worked for SENT, even though the fees for such work were collected after Reichman ended his employment with SENT. Indeed, this interpretation is consistent with the remainder of the agreement (see OCGA § 13-2-2 (4)), as Reichman's rights under the agreement only ended "as of the date of [his] termination, *except as otherwise provided herein.*" (Emphasis supplied.) The agreement provides that Reichman is due to receive compensation for any fees collected with respect to his work, and by its very terms the contract provides that the right to collect such compensation survives the final day of Reichman's employment. The trial court therefore erred in granting SENT summary judgment on this breach of contract claim.

2. However, the trial court correctly concluded that SENT and MMA were entitled to summary judgment on Reichman's fraud and misrepresentation claims. To prove fraud, Reichman was required to show: "(1) a false representation or omission of material fact; (2) scienter; (3) an intent to induce the party alleging fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." In addition, a plaintiff must elect to affirm the contract and sue for breach or rescind the contract and sue for fraud, and generally cannot sue for both. See *Estate of Sam Farkas, Inc. v. Clark*, 238 Ga. App. 115, 117 (1) (517 SE2d 826) (1999). If the contract has a merger clause and the party has affirmed the contract, the merger clause generally precludes any fraud action for oral misrepresentations not included in the agreement. Id. at 117-118 (1). In circumstances where the misrepresentation actually becomes a term of the contract, however, a party electing to affirm the contract may sue in tort for fraud, but is subject to all defenses available under the contract. See *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 75 (441 SE2d 421) (1994); see also *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 711-713 (2) (507 SE2d 493) (1998). Here, Reichman has affirmed the contract.

Reichman contends that SENT misrepresented the overall collection rate for its physicians to induce him to enter into the employment agreement. However, the collection rate does not appear as a term anywhere in the contract, and the merger clause in the agreement would therefore prevent any viable claim by Reichman for fraudulent inducement. *Clark*, supra, 238 Ga. App. at 119 (1).

To the extent that Reichman argues that SENT misrepresented the 60.5 percent 1998 overhead factor to induce him to enter the

contract, and that he therefore has a viable claim in tort for fraud because the term actually appears in the contract (see *Woodhull,* supra, 234 Ga. App. at 711-712 (2)), such argument is without merit. Although the 1998 overhead factor was later calculated to be somewhat higher than 60.5 percent, the evidence reveals that SENT did not even know about the additional factor that affected the overhead-factor calculation until well after the agreement was already complete. There is no evidence that SENT knowingly made a false representation to Reichman or that SENT had any intent to mislead him. Reichman has not presented evidence to sustain an action for fraud or misrepresentation against SENT.

Reichman's arguments that MMA misrepresented the collection rate and the 1998 overhead factor of 60.5 percent to induce him to enter the contract fail as well.[1] The undisputed evidence reveals that MMA believed that the statements regarding the collection rate and overhead factor were true and were based on solid calculation methods. There was further no evidence that MMA had any intent to mislead Reichman. Having failed to present evidence of scienter, Reichman's claims must fail. See *GLW Intl. Corp. v. Yao,* 243 Ga. App. 38, 41 (3) (a) (532 SE2d 151) (2000) ("With regard to the element of scienter, the gist of an action for damages in tort based on the falsity of representations is that they must have involved actual moral guilt.") (punctuation and footnote omitted).

Thus, the trial court properly granted summary judgment to SENT and MMA as to Reichman's fraud claims, but as explained in Division 1, erred in granting summary judgment to SENT on one of Reichman's breach of contract claims.

*Judgment affirmed in part and reversed in part. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED MARCH 10, 2004 —
RECONSIDERATION DENIED APRIL 1, 2004.

*Anderson Dailey, Mark Ford,* for appellant.
*Morris, Manning & Martin, Robert C. Threlkeld, Allen & Weathington, Paul E. Weathington, Kara A. Hicks,* for appellees.

---

[1] We note that MMA cannot rely on the merger clause in the agreement between SENT and Reichman as a defense to the fraud action, because MMA is not a party to the agreement. See *GCA Strategic Investment Fund v. Joseph Charles & Assoc.,* 245 Ga. App. 460, 463 (3) (537 SE2d 677) (2000).