A05A0183, A05A0237. FIX et al. v. MCALLISTER et al.
(two cases).
(615 SE2d 547)

MIKELL, Judge.

In this breach of contract action, Susanne E. Fix, M.D. appeals the trial court's grant of partial summary judgment to Phillip McAllister, M.D. and Brunswick Neurosurgical Spine Institute, Inc. (hereinafter "BNSI") on the issue of contract construction in Case No. A05A0183 and the denial of her motion for partial summary judgment on the same issue in Case No. A05A0237. We consolidate these appeals for disposition in a single opinion and affirm both judgments.

---

[5] *Blackwell v. Goodwin*, 236 Ga. App. 861, 862 (1) (513 SE2d 542) (1999). See Court of Appeals Rule 25 (c) (2).

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[1] We conduct a de novo review of the evidence when reviewing a grant or denial of summary judgment[2] and "view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[3] So viewed, the evidence shows that in August 2000, Dr. Fix, a neurosurgeon, moved to Brunswick to work for BNSI.[4] Dr. McAllister owned BNSI and was also an employee of the entity.

In conjunction with her employment, Dr. Fix executed an Employment Agreement (the "Agreement"). The Agreement included specific terms that governed Dr. Fix's compensation during her tenure with BNSI and in the event that her employment terminated. The issues involved in this appeal derive solely from the interpretation of these terms, which are provided below.

> 2. Compensation. (a) *First Year.* During the first year of this Employment Agreement, Employer agrees to pay, and Employee agrees to accept the sum of Two Hundred Thousand ($200,000.00) Dollars as and for Employee's total consideration for the performance of her duties and responsibilities under this Agreement. . . . Employer shall provide Employee during the first year of employment with access to and use of all of the facilities of Employer to aid and assist Employee in developing her medical practice in this community and in performing her duties and responsibilities hereunder.
>
> (b) *Second and Successive Years.* After the first year of employment, Employee's compensation shall be an amount equal to the actual medical fees billed and collected by Employee for her services to patients reduced by an amount equal to Employee's allocated overhead expenses. . . . Employee's proportionate share of overhead expenses . . . shall be an amount equal to the total overhead of the practice divided equally between those physicians practicing with

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] (Citation and punctuation omitted.) *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).

[3] (Citation omitted.) *Matjoulis*, supra.

[4] Dr. Fix's husband, Dr. Scott Hines, a neurologist, also moved to Brunswick and joined BNSI, but he is not a party to this appeal.

Employer for the applicable accounting period. . . . Nevertheless, the parties hereto agree that after the first year, Employee shall be compensated based on the amount she collects reduced by the aforementioned overhead expenses.[5]

3. Termination of Employment. (a) *By Employer for Cause.* . . . (iii) If such termination shall occur after the first year of employment, Employee shall be paid one half of the "net accounts receivable generated" by Employee less a charge of fifteen (15%) percent to cover the cost of processing and collecting said accounts receivable, which accounts receivable shall be determined as of the effective date of the termination of Employee's employment. The amounts paid hereunder shall be deemed to be a "termination salary" and shall be paid as the accounts receivable are collected. The term "net accounts receivable generated" shall be defined hereunder as the amount of accounts receivable generated by Employee which are actually collected less the allocated overhead expenses (incurred whether paid or not) of Employee for the period in question.

The Agreement stated that Dr. Fix's first year of employment began on August 1, 2000, and ended on July 31, 2001. Dr. Fix's employment relationship with BNSI terminated on December 14, 2001. On April 4, 2002, Dr. Fix brought the instant action against appellees alleging several causes of action, including breach of contract. McAllister and BNSI answered and asserted a counterclaim against Dr. Fix, contending that she was overcompensated. In her second amended complaint, Dr. Fix set forth specifically the allegations that are germane to these appeals. She alleged, among other things, that appellees did not pay her income that she earned (1) during the second year of her employment and (2) after she terminated her employment with BNSI. The parties filed cross-motions for partial summary judgment on the compensation terms set forth above. Ruling from the bench, the trial court denied Dr. Fix's motion and granted the appellees' motion. Dr. Fix appeals these rulings, enumerating the same two errors in both cases.

1. Dr. Fix first argues that the trial court misapplied the Georgia rules of contract construction when it denied her motion and granted appellees' motion regarding Paragraph 2 (b) of the Agreement. Specifically, Dr. Fix maintains that Paragraph 2 (b) unambiguously provides that during her second year of employment with BNSI, the

---

[5] For purposes of these appeals, the issue of the amount of allocated overhead expenses is not pertinent.

amount of her compensation would be derived, in part, from the medical fees received during that year for work that she performed during her first year of employment. Conversely, appellees argue that the Agreement unambiguously provides a fixed amount of compensation for work performed during the first year of Dr. Fix's employment and that her second year compensation was to be determined based upon work performed during her second year of employment. We agree with appellees.

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[6]

"Ambiguity exists where contract language is indistinct, duplicitous, or has an uncertain meaning."[7] Where no ambiguity exists, construction is unnecessary, and we must simply enforce the contract according to its clear terms.[8] We review the trial court's construction of a contract de novo.[9]

Dr. Fix's interpretation of Paragraph 2 (b) requires us to rely solely on the last sentence of that paragraph, which states: "Nevertheless, the parties hereto agree that after the first year, Employee shall be compensated based on the amount she collects reduced by the aforementioned overhead expenses." However, in determining whether Paragraph 2 (b) is clear and unambiguous, we must look at it in the context of the entire agreement, not in isolation.[10]

The Agreement provided that the first year of Dr. Fix's employment began on August 1, 2000, and ended on July 31, 2001. Regarding compensation for that year, Paragraph 2 (a) stated that Dr. Fix

---

[6] (Citation omitted.) *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999).

[7] (Citation omitted.) *Reichman v. Southern Ear &c. Surgeons*, 266 Ga. App. 696, 699 (1) (598 SE2d 12) (2004).

[8] *Caswell v. Anderson*, 241 Ga. App. 703 (527 SE2d 582) (2000).

[9] *Buckmon v. Futch*, 237 Ga. App. 67, 69 (1) (514 SE2d 863) (1999).

[10] *Bemco Mattress Co. v. Southeast Bedding Co.*, 196 Ga. App. 509, 510 (1) (396 SE2d 238) (1990).

accepted $200,000 as compensation in total consideration of her performance of her duties and responsibilities during that time. Paragraph 2 (b) of the Agreement provided that after the first year, Dr. Fix was to receive compensation in an amount equal to the actual medical fees billed and collected for her services to patients reduced by her share of allocated overhead expenses. Reviewing the compensation terms of the Agreement as a whole, they unambiguously and clearly provide that the $200,000 that Dr. Fix received as a salary during her first year of employment was paid in exchange for all services rendered during that time. Therefore, Dr. Fix could not be compensated during her second year for work performed during the first. It is simply not credible that the appellees intended to pay Dr. Fix a fixed salary of $200,000 during the first year, then pay her additional monies during the second year based upon work she had already been paid to perform during her first year.

Dr. Fix relies on *Reichman*[11] for the proposition that the trial court was required to look at Paragraph 2 (b) alone to determine whether it was ambiguous, and could only look at Paragraph 2 (a) if it concluded that Paragraph 2 (b) was ambiguous. *Reichman* does not support Dr. Fix's position. Furthermore, Dr. Fix's "interpretation defies one of the most well-established rules of contract interpretation, that the contract must be construed as a whole. See OCGA § 13-2-2 (4)."[12] In other words, "[t]he whole contract must be looked to in arriving at the construction of any part."[13] Additionally, the last sentence of Paragraph 2 (b) generally summarizes the specific terms that precede it, and "under general rules of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive."[14] Thus, reviewing the Agreement as a whole, Paragraph 2 (b) was unambiguous and the interpretation urged by the appellees was correct. Accordingly, the trial court's grant of summary judgment to the appellees on this issue was appropriate.

2. In the remaining enumerated error in both cases, Dr. Fix argues that the trial court erred by granting summary judgment to appellees and denying her summary judgment on the meaning of Paragraph 3 (a) (iii), which governed her termination compensation. Dr. Fix raises the same arguments that she asserted in her first enumerated error. She maintains that her termination compensation should have been calculated based upon collections received during the second year from work that she performed during the first year of

---

[11] Supra.

[12] *Ga. Farm &c. Ins. Co. v. Wilkerson*, 250 Ga. App. 100, 102 (549 SE2d 740) (2001).

[13] *Schwartz,* supra at 661 (2).

[14] Id.

her contract. For the reasons explained in Division 1, we hold that Paragraph 3 (a) (iii) was also unambiguous. It provided that if Dr. Fix's employment terminated after the first year of her employment, her termination compensation would be based upon monies collected for services she rendered during the second year of her employment, not the first.[15] Accordingly, summary judgment in favor of the appellees on Paragraph 3 (a) (iii) was appropriate as well.

*Judgments affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED MAY 27, 2005.

*Bouhan, Williams & Levy, Walter C. Hartridge, David M. Conner,* for appellants.

*Oliver, Maner & Gray, Inman G. Hodges, Christopher L. Ray, John R. Ferrelle,* for appellees.

---

[15] Compare *Reichman,* supra (contract stating only that employee was entitled to receive compensation "due" him through the effective date of termination was ambiguous because it did not define what it meant by the word "due," which could have meant fees earned but not received by the date of termination or only those fees received by the date of termination). In this case, the Agreement provided that termination compensation would be paid as accounts receivables were collected if termination occurred after the first year of employment.