## WHOLE COURT

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**

http://www.gaappeals.us/rules/

**March 28, 2014**

# In the Court of Appeals of Georgia

A13A2351. IN RE: ESTATE OF LORRAINE McKITRICK.

McFADDEN, Judge.

This appeal, filed on behalf of Lorraine McKitrick, an incapacitated adult ("the Ward"),[1] by attorneys she retained shortly before she was adjudged incompetent, seeks review of two orders entered by the probate court. Specifically, she first challenges the probate court's finding that the conservator appointed for her estate did not have a conflict of interest that resulted in harm to the Ward. But because the Ward failed to include the transcript of the hearing at which this issue was addressed and

---

[1] See OCGA § 29-5-20 (a) (5) ("In every conservatorship the ward has the right to: . . . Individually, or through the ward's representative or legal counsel, bring an action relating to the conservatorship, including the right to file a petition alleging that the ward is being unjustly denied a right or privilege granted by Chapter 4 of this title and this chapter and the right to bring an action to modify or terminate the conservatorship pursuant to the provisions of Code Sections 29-5-71 and 29-5-72[.]")

evidence presented, we must affirm. The Ward also challenges the court's order establishing the hourly rate that counsel for the Ward could bill for legal fees to be paid by the conservator. We vacate the probate court's order establishing the hourly rate and remand for the court to consider evidence on the issue.

The record reveals that on January 4, 2013, prior to a determination that she was incapacitated, McKitrick retained counsel to represent her in "Cobb County Probate case #12-1853." It is undisputed that on February 20, 2013, however, the probate court appointed McKitrick's son, Thomas Richardson, to serve as her conservator, and her daughter, Mary Mellom, to serve as her guardian.[2] While it is not included in the record here on appeal, the parties do not dispute that around March 11, 2013, Richardson, as conservator, filed a "Petition to Maintain Previously Established Estate Plan and for Continuing Powers to Invest." The Ward objected that her son Richardson should be removed as conservator because his ownership interest in her assets created a substantial conflict of interest that caused her harm.

On April 29, 2013, the probate court held a hearing on the matter during which the "question of counsel's authority to serve as counsel for the Ward" was also

_____

[2]It appears that the probate court also appointed a guardian ad litem for the Ward.

2

raised.[3] Two days following the hearing, counsel for the Ward filed a "Notice of Intent to Continue as Ward's Attorney," asserting that because the Ward hired counsel prior to the capacity hearing, he intended to continue to represent her interests. On May 17, 2013, the probate court entered orders addressing these issues, and it is from these rulings that the Ward appeals.

1. *Conservator's conflict of interest.*

The Ward complains that her conservator, because of his conflict of interest, "should either step down or divest himself of the ownership of the assets of the Ward's estate." She complains that the conservator refused to "spend any of the corpus of the Estate on the items that the Ward desires," and "has been dilatory in paying necessary items." The conservator responds that the evidence presented at the hearing on this matter reveals that his judgment is not clouded, that he has sought authority for all necessary expenditures as well as items and services requested by the Ward, and that the evidence showed nothing other than that he has been carefully conserving the Ward's assets and paying for her care. The probate court ruled that although the conservator had a conflict of interest as a result of his potential death

_____

[3]A transcript of this hearing was not included in the record here on appeal.

3

benefit in the Ward's accounts, there was no showing that the conflict had resulted in harm to the Ward.

OCGA § 29-5-24 (b) provides:

> The conservator must disclose promptly any conflict of interest between the conservator and the ward when it arises or becomes known to the conservator. The conservator must seek the court's determination as to whether the conflict is insubstantial or whether it is in the best interest of the ward for the conservator to continue to serve and not forfeit any property right. If the court finds that the conflict of interest is substantial or contrary to the best interest of the ward, the conservator may either resign or forfeit the property interest that is the source of the conflict.

"We review a probate court's evidentiary holdings under the familiar abuse of discretion standard of review." (Citations and footnote omitted.) *Dorsey v. Kennedy*, 284 Ga. 464 (1) (668 SE2d 649) (2008). But because a transcript is necessary for a review of the evidence presented at the hearing on this matter, and the record here does not contain a transcript, we "must presume the evidence was as the probate court found and its judgment correct on all issues presented. [Cit.]" *Gordon v. Cotton*, 285 Ga. 826, 827 (684 SE2d 621) (2009). We therefore affirm the probate court's ruling with regard to the conservator's alleged conflict of interest.

2. *Attorney fees*.

The Ward complains that the probate court erred in setting an hourly rate at which her hired counsel could bill for his services.[4] We vacate and remand for the probate court to consider parol evidence on this issue. But first we address whether the fee agreement contemplated a flat fee or an hourly rate, an issue raised by the dissent.

(a) *The parties contemplated an hourly rate.*

The dissent argues that application of the rules of contract construction leads to the conclusion that the Ward and her attorney intended a flat rate when they entered into the Fee Agreement and Contract for Representation. But the parties do not challenge on appeal the probate court's ruling that the fee agreement "expressly contemplate[s] an hourly rate for services." Nonetheless, given our de novo standard of review, see *Reichman v. Southern Ear, Nose & Throat Surgeons*, 266 Ga. App. 696, 699 (1) (598 SE2d 12) (2004), and the dissent's discussion of the issue, we address whether the fee agreement provided for a flat fee or an hourly rate.

The Fee Agreement and Contract for Representation provides in pertinent part:

**Fee**

---

[4]While this enumeration concerns the Ward's counsel's fees, it indirectly relates to the conservatorship. As noted by the probate court, "the conservator . . . needs direction in how to assess and pay" the fees charged by the Ward's counsel.

The Client agrees to pay the Firm a retainer of $2,700.00 to try and cover the case through its completion. The Firm will provide the Client with periodic billing statements detailing the work performed during the billing period, the number of hours and fractions thereof expended in performing the work, the nature and amount of the expenses incurred during the billing period, the amount transferred out of the escrow account in payment of the services performed, expenses incurred during the billing period, and the amount remaining in the escrow account.

The probate court remarked that she was "tempt[ed] . . . to limit the fees to a flat rate." She acknowledged that the agreement between the Ward and her counsel "is obviously vague as to the billing rates to be charged," but held that it "expressly contemplate[d] an hourly rate for services." We agree.

"The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). "[C]ontracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another." *Schwartz v. Schwartz*, 275 Ga. 107, 108 (1) (561 SE2d 96) (2002) (citation omitted). "The provisions of a text should be interpreted in a way that renders them compatible, not contradictory." Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts (West 2012).

To hold that this provision contemplated a flat fee renders meaningless the provisions regarding the escrow account. Had the Ward and her counsel intended a flat fee, then there would have been no reason to require the billing statements to detail "the amount transferred out of the escrow account in payment of the services performed, . . . [and] the amount remaining in the escrow account." A flat fee is a lump sum; if the parties had contemplated a flat fee, then once the fee had been earned and paid from the escrow account, no amount would remain in that account.

On the other hand, if the Ward and her counsel intended that counsel would be paid at an hourly rate, the provision makes complete sense and every term has meaning: as counsel "performed [work] during the billing period," he would keep track of "the number of hours and fractions thereof expended in performing the work," and then "transfer[] out of the escrow account[, which contained the $2,700 retainer, the amounts] in payment of the services performed," while keeping the Ward informed of "the amount remaining in the escrow account." This construction upholds the intent of the Ward and the attorney, and therefore is the construction that must be enforced. See OCGA § 13-2-3 ("The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and

7

sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction.")

The fact that hired counsel presumably drafted the agreement does not change the outcome, as the dissent would have it. It is true that a construction against the drafter is preferred. OCGA § 13-2-2 (5). But "no canon of interpretation is absolute. Each may be overcome by the strength of differing principles that point in other directions." *Estate of Pitts v. City of Atlanta*, 323 Ga. App. 70, 75 (4) (746 SE2d 698) (2013) (citation and punctuation omitted). And while ambiguous contracts

> must be construed against the party drawing and executing them, nevertheless, a contract should not be torn apart and construed in pieces. Instead, the court should look to the entire instrument and so construe it as to reconcile its different parts and reject construction which leads to contradiction, in order to ascertain the true intention of the parties, which is the real purpose of judicial construction of contracts.

*Snipes v. Marcene P. Powell & Assocs.*, 273 Ga. App. 814, 817 (1) (a) (616 SE2d 152) (2005). Reviewing the entire agreement as required by the law, it is clear that the Ward and hired counsel intended that counsel would be paid an hourly rate. Accordingly, this is the construction that must be enforced. OCGA § 13-2-3.

(b) *Hourly rate.*

8

Once the probate court concluded that the fee agreement contemplated an hourly rate for services, she ordered that "the hourly rate [would] be established as that of a court appointed attorney in the Cobb Circuit Defender's Office at a rate of $45 for out of court service and $60 for courtroom service." The Ward argues that the probate court erred in setting the hourly rate. She concedes that "her attorneys mistakenly omitted the rate at which the firm would bill its hourly work," agrees that the probate court correctly ruled that there exists an ambiguity regarding the hourly rate, but asserts that such ambiguity was explained by evidence -- a billing statement -- presented at the April 29, 2013, hearing. The conservator disputes that any billing statements were tendered as evidence at that hearing. And, as detailed above, the Ward has failed to include a transcript of that hearing in the record on appeal.

Regardless of whether the billing statements were tendered at the April 29, 2013, hearing, however, the probate court's order makes clear that she did not consider billing statements when she ordered that the hourly rate would be "that of a court appointed attorney in the Cobb Circuit Defender's office at a rate of $45 for out of court service and $60 for courtroom service." In fact, the probate court gives no explanation as to how she concluded that the Ward and her attorney had intended the hourly rate to be "$45 for out of court service and $60 for courtroom service." Cf.

9

OCGA § 13-2-3 ("The cardinal rule of construction is to ascertain the intention of the parties.").

The fee agreement is ambiguous in that it fails to specify the hourly rate component of the contractual consideration that the parties intended the Ward would pay for her attorney's services. See *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 106 (1) (661 SE2d 578) (2008) ("Ambiguity exists where the words used in the contract leave the intent of the parties in question.") (citation omitted). Having agreed that the Ward would compensate her attorney for each hour of his work at a particular rate of pay and given that the particular hourly rate would be integral to such an agreement, it could not have been the intent of the Ward and her attorney that there was no hourly rate. See *Jordan v. Tri County Ag*, 248 Ga. App. 661, 663 (1) (546 SE2d 528) (2001). But this ambiguity can be resolved by the consideration of parol evidence. OCGA § 13-2-2 (1); *ESI Cos. v. Fulton County*, 271 Ga. App. 181, 184-185 (c) (1) (609 SE2d 126) (2004) (parol evidence can explain but not vary ambiguous contractual language); *Jordan*, supra, 248 Ga. App. at 663 (1) (citation omitted); *Touche Ross & Co. v. DASD Corp.*, 162 Ga. App. 438, 439 (1) (292 SE2d 84) (1982) ("parol evidence may be offered to show the intent of the parties" when resolving

contractual ambiguities). Consequently, we must vacate the probate court's order and remand for proceedings not inconsistent with this opinion.

*Judgment affirmed in part, vacated in part and case remanded. Phipps, C.J,. Barnes, P. J., and Ellington, P. J., concur; Doyle, P. J., Boggs and Branch, JJ., concur in part and dissent in part.*

A13A2351. IN RE: ESTATE OF LORRAINE McKITRICK.

BOGGS, Judge, concurring in part and dissenting in part.

I concur fully in Division 1. But because I would hold that the agreement must be construed to provide only for a flat fee and not an hourly rate, I respectfully dissent to Division 2. As cited by the majority, the agreement between the Ward and her counsel provides as follows:

**Fee**

The Client agrees to pay the Firm a retainer of $2,700.00 to try and cover the case through its completion. The Firm will provide the Client with periodic billing statements detailing the work performed during the billing period, the number of hours and fractions thereof expended in performing the work, the nature and amount of the expenses incurred

during the billing period, the amount transferred out of the escrow account in payment of the services performed, expenses incurred during the billing period, and the amount remaining in the escrow account.[1]

The agreement contained neither a provision expressly stating that the client would pay the firm by the hour, nor any provision governing fees if the retainer were to be exhausted by hourly charges.

The Ward's argument here turns upon the construction of the agreement, which "involves a question of law for the court to resolve based on the intent of the parties as reflected in the agreement." *Reichman v. Southern Ear, Nose & Throat Surgeons*, 266 Ga. App. 696, 699 (1) (598 SE2d 12) (2004). And we review this issue de novo. Id. "First, we must determine if the contract language is ambiguous, and, if so, then we apply the appropriate rules of construction set forth in OCGA § 13-2-2." Id.

While the probate court concluded that the agreement "expressly contemplate[d] an hourly rate for services," the plain language of the agreement itself is not so clear. The "Fee" section of the agreement provides for a retainer fee of $2,700, and that counsel will present the Ward with periodic billing statements of the

_____

[1]The agreement also contains a merger clause: "This agreement constitutes the entire agreement between the Firm and the Client with respect to this matter and cannot be changed except by written agreement."

2

work performed, number of hours expended, the amount of expenses incurred, the amount transferred out of escrow, and the amount remaining in escrow. This section could be interpreted as providing for a retainer fee *and* contemplating payment for the number of hours expended in performing the work, i.e., an hourly rate. On the other hand, it could be interpreted to provide that the Ward would pay counsel $2,700 and that counsel would provide the Ward with billing statements to show the work performed for that amount, which was paid "to try and cover the case through its completion."

The agreement is unclear as to whether the parties even agreed that the Ward would pay counsel an hourly rate. The fee provision is therefore ambiguous as it is open to more than one interpretation.[2] See *Shepherd v. Greer, Klosic & Daugherty*, ___ Ga. App. ___ (750 SE2d 463) (2013) (ambiguity means "duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and it also signifies being open to various interpretation." (Citations and punctuation omitted.)).

---

[2]It is also unclear as to whether the counsel's retainer fee "to try and cover the case through its completion," means that counsel would "try," i.e., litigate, and "cover," i.e., handle or supervise the case for a stated fee, or that counsel would "try," i.e. attempt or make an effort, "to cover the case through its completion."

In looking to the rules of contract construction set forth in OCGA § 13-2-2 to resolve the ambiguity, and pursuant to OCGA § 13-2-2 (5) specifically, as the preceding rules provide us no resolution, "as judicially interpreted, where the construction of a contract is doubtful, the construction that goes most strongly against the drafter of the agreement is to be preferred." *Reichman*, supra, 266 Ga. App. at 699-700 (1); see *Dept. of Community Health v. Pruitt Corp.*, 295 Ga. App. 629, 632-633 (673 SE2d 36) (2009) (construing ownership provision against the drafter); see also *Lewis v. Smith*, 274 Ga. App. 528, 529 (1) (618 SE2d 32) (2005) ("Counsel must be held to the strict language of the instrument he prepared. [Cits.]"); *Lewis v. Uselton*, 202 Ga. App. 875, 879-880 (3) (416 SE2d 94) (1992) ("An ambiguous provision in a contract is construed most strongly against its maker . . . .The provision in this contract must be construed most strongly against the attorney who proposed it.") Therefore, construing the agreement against counsel for the Ward as the drafter, it should be read to provide for a fee of $2,700 for counsel's work on the case through its completion, and I would hold that the trial court erred in finding otherwise.[3]

---

[3]Although the Ward argues that extrinsic evidence shows the hourly rate, the issue here is not the rate itself, but whether the parties agreed to an hourly rate. In any case, "parol evidence cannot add to, take from, or vary a written contract, and it cannot be used to explain an ambiguous agreement if the rules of contract construction resolve the ambiguity." *Pruitt Corp.*, supra, 296 Ga. App. at 633. We

For this reason, I respectfully dissent.

I am authorized to state that Presiding Judge Doyle and Judge Branch join in this dissent.

---

have applied those rules here to conclude that the agreement did not provide for the payment of an hourly fee.