**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 9, 2026**

# In the Court of Appeals of Georgia

A25A1867. IN RE: ANISE DUBOIS, PROPOSED MEDICAL CONSENT WARD.

GOBEIL, Judge.

This appeal arises from the Probate Court of Gwinnett County's order appointing the Department of Human Services, Division of Aging Services, (the "Department") as the temporary medical consent guardian for Anise Dubois. For the reasons set forth below, we reverse the probate court's order denying the Department's motion to vacate the appointment order.

We review a probate court's evidentiary holdings for an abuse of discretion. *In re Estate of McKitrick*, 326 Ga. App. 702, 704(1) (757 SE2d 295) (2014). We review legal questions de novo. Id. at 704(2)(a).

The record shows that Dubois is an 89 year old woman who was admitted to Piedmont Eastside Medical Center in March 2025 with low oxygen and flu-like symptoms. Dubois was a resident of a long-term care facility and due to prior medical complications, was mostly non-verbal and unable to communicate meaningfully with healthcare providers or make informed decisions about her medical treatment. Her two children were contacted by hospital staff and either refused to take responsibility for her or failed to respond. Dubois's medical team recommended that she receive a feeding tube because she was unable to safely take medications or food through her mouth. Concluding that the procedure required medical consent that Dubois could not herself provide, Renee Childers, registered nurse and Director of Care Management at the hospital, petitioned the probate court to appoint the Department as Dubois's temporary medical consent guardian pursuant to OCGA § 29-4-18.

The probate court held a hearing on April 14, 2025, at which Childers, members of Dubois's medical team, and a representative of the Department were present.[1] According to the probate court's order, one of Dubois's doctors testified that the feeding tube was recommended because Dubois could not safely receive hydration,

_____

[1] A transcript of this hearing does not appear in the record.

nutrition, or medication orally, and she was not tolerating the nasal tube that was being used for that purpose. She could receive a different type of nutrition intravenously, but such a procedure cannot safely be administered by her long-term care facility and requires sustained admission in the hospital. Given that a prolonged hospital stay would increase Dubois's risk of infection, her medical team recommended the feeding tube to facilitate her discharge. Childers testified as to her efforts to contact Dubois's family members, but she was unable to locate anyone who would participate in Dubois's medical care. Finding that Dubois was in need of a medical consent guardian to provide informed consent for the feeding tube procedure, and there being no individual willing or available to provide such consent, the probate court appointed the Department as temporary medical consent guardian.[2] The next day, the Department

---

[2] Although not raised by the parties, we note that we have considered our jurisdiction in this appeal, as we must do, and we find that this appeal is not moot. OCGA § 5-6-48(b)(3); *In the Interest of I.B.*, 219 Ga. App. 268, 270 (464 SE2d 865) (1995) (we are compelled "to dismiss appeals where the questions presented have become moot") (citation modified). Although the temporary guardianship ordered by the court in this case has long-expired, the question presented here is one that is capable of repetition yet evades review. OCGA § 29-4-18(j) states that a temporary medical consent guardianship shall terminate after 60 days if no other guardian is appointed nor the medical situation resolves. Certainly, the Department (nor any other party) could not achieve appellate relief within 60 days if it objects to an appointment. Further, the legal question presented by the Department in this case is not limited to the parties here; rather it concerns the application of the statute to the

3

objected to the appointment and moved to vacate the probate court's order for the reasons described below. The court denied the Department's motion.[3] This appeal followed.

On appeal, the Department argues inter alia that the probate court erred in appointing it Dubois's temporary medical consent guardian because it is unwilling and unable to accept such an appointment as is required under the statute. Further, its unwillingness and inability to accept such an appointment renders the appointment an abuse of discretion, as it was not in Dubois's best interest to have such an entity serve as her medical consent guardian. We agree that the court erred.

As the Supreme Court of Georgia has explained in interpreting statutes,

> a statute draws its meaning from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the

---

Department generally. See *I.B.*, 219 Ga. at 273 (an appeal is not moot if there is "[i]ntrinsically insufficient time to obtain judicial relief for a claim common to an existing class of sufferers").

[3] The Department filed a motion for reconsideration that was not ruled upon.

statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*McBrayer v. Scarbrough*, 317 Ga. 387, 393(2)(c) (893 SE2d 660) (2023) (citation modified).

In order to consider the statutes in context, we begin with a review of the statutes that are relevant to this appeal. First, OCGA § 31-9-2 addresses consent for surgical and other medical treatments generally. OCGA § 31-9-2(a) lists persons who may consent to medical treatment — starting with the patient receiving the medical treatment, or those the patient has authorized to consent on his or her behalf. OCGA § 31-9-2(a)(1), (1.1). If a person is unable to consent for himself or herself, the statute lists family members in order of priority as they can be located, and adult friends are permitted to consent if they meet certain criteria. OCGA § 31-9-2(a)(6)-(7). "In the absence, after reasonable inquiry, of any person authorized in subsection (a) of this Code section to consent for the patient, a hospital or other health care facility or any interested person may initiate proceedings for expedited judicial intervention to appoint a temporary medical consent guardian pursuant to Code Section 29-4-18." OCGA § 31-9-2(a.1). OCGA § 29-4-18, in turn, governs the proceedings to appoint

a temporary medical consent guardian, including requirements for the petition, the standard for the court to determine whether a temporary medical consent guardian is necessary, and who may serve as a temporary medical consent guardian.

OCGA § 29-4-1 et seq. governs guardianship of adults generally, when a court finds that an adult lacks "sufficient capacity to make or communicate significant responsible decisions concerning his or her health or safety." OCGA § 29-4-1(a). OCGA § 29-4-3 defines an order of preference for who is to be appointed guardian — starting with a person nominated by the adult and moving on to his or her spouse and other family members, and designating the Department as a guardian of last resort if no other options are available. OCGA § 29-4-3(b). Other statutes within this Chapter govern the petition for appointment of a guardian (OCGA § 29-4-10), the hearing to be conducted (OCGA § 29-4-12), the order making such an appointment (OCGA § 29-4-13), emergency guardians (OCGA §§ 29-4-14, 29-4-15, 29-4-16), and, finally, temporary medical consent guardians (OCGA § 29-4-18).

Childers's petition in this case explicitly was brought, and the trial court's order explicitly was issued, pursuant to OCGA § 29-4-18 — in other words, under the specific code section authorizing interested persons to petition for the appointment

of a temporary medical consent guardian.[4] However, as argued by the Department, OCGA § 29-4-18(i) requires in plain terms that the individual who is appointed as temporary medical consent guardian be "(1) willing and able to become involved in the proposed medical consent ward's health care decisions and (2) willing to exercise reasonable care, diligence, and prudence and to consent in good faith to medical or surgical treatment or procedures which the proposed medical consent ward would have wanted had he or she not been incapacitated." Here, the probate court's order lacks any findings regarding whether the Department was willing and able to accept the appointment or willing to exercise the required care to consent on Dubois's behalf. Once the Department objected to the appointment stating its unwillingess and inability to act as a temporary medical consent guardian, the probate court erred in not vacating its order, as the Department was not a fit guardian under the explicit requirements of the statute. OCGA § 29-4-18(i).

Childers points to OCGA § 29-4-3(b.1) as the authority under which the probate court could appoint the Department as Dubois's guardian against its will.

---

[4] And as mentioned, OCGA § 31-9-2 specifically directs interested parties to OCGA § 29-4-18 for the appointment of a temporary medical consent guardian when there is an absence of individuals authorized to serve under OCGA § 31-9-2.

Indeed, the probate court cites this statute in its order denying the Department's motion to vacate the appointment order, stating that the Department "is statutorily authorized to act as the guardian of last resort" under OCGA § 29-4-3(b.1) As described above, OCGA § 29-4-3 includes different categories of individuals with a relationship to the adult who can serve as guardian and then states that "[i]f no other person is available to serve as guardian of the ward," and if there is no public guardian available, "the court may appoint the Department of Human Services as guardian." OCGA § 29-4-3(b.1).

However, OCGA § 29-4-3(b.1), which permits the appointment of the Department as a guardian of last resort, applies to the appointment of guardians to adults in general, whereas OCGA § 29-4-18 applies specifically to the appointment of a temporary medical consent guardian. And it is of course well-established that specific statutes control over general ones. *Moosa Co. v. Comm'r of Ga. Dep't of Revenue*, 353 Ga. App. 429, 432 (838 SE2d 108) (2020). So to the extent these statutes are contradictory, we defer to the statute governing the specific situation presented in this case.

Further, the statutory schemes for the different situations have distinct requirements for their petitions[5] (compare OCGA § 29-4-10(b) with OCGA § 29-4-18(c)), hearings (compare OCGA § 29-4-12 with OCGA § 29-4-18(d)-(g)), orders (compare OCGA § 29-4-13 with OCGA § 29-4-18(h), (j)), and, as is particularly relevant here, who may serve as guardian. Had Childers proceeded under OCGA § 29-4-10, then the probate court may have been authorized to appoint the Department pursuant to OCGA § 29-4-3(b.1), if all of the other requirements of the statutes were satisfied. Childers proceeded, however, under OCGA § 29-4-18, which includes the additional requirement that the individual[6] being appointed be willing and able to

_____

[5] Notably, petitions brought under OCGA § 29-4-18 require including "[w]hether a petition for the appointment of a guardian or conservator has been filed or is being filed in conjunction with the petition for the appointment of the temporary medical consent guardian." OCGA § 29-4-18(c)(7). This language only strengthens our conclusion that these statutes contemplate two distinct proceedings that could overlap if both petitions were filed "in conjunction" with each other, but they were not in this case. In Childers's petition in this case, she marked that no "petition for permanent guardianship and/or conservatorship has been/will be filed."

[6] Another difference between the statutes is what kind of entity can be appointed guardian. OCGA § 29-4-2(a) specifies that only individuals may be appointed as a guardian of an adult, unless a public guardian or the Department is appointed, whereas OCGA § 29-8-18(i) includes no such exception for non-individuals, stating that the probate court may appoint an "individual" as temporary medical consent guardian.

9

become involved in the medical consent ward's health care. OCGA § 29-4-18(i).[7] There is no mechanism under which the court here would have had the authority to appoint the Department as Dubois's guardian pursuant to OCGA § 29-4-3(b.1) without a proper petition under OCGA § 29-4-10, a proper hearing under OCGA § 29-4-12, and an order complying with OCGA § 29-4-13.

Childers also argues that a Department representative was present at the hearing and "expressed that [the Department] could and would serve as Temporary Medical Consent Guardian for Ms. Dubois." However, such purported assent by the Department does not appear in the record. There is no transcript of the hearing in the record, and the probate court made no such finding in either the original order or the denial of the Department's motion to vacate. The probate court noted merely the

---

[7] Attempting to note their similarities, the probate court reasoned that OCGA § 31-9-2 (who may consent to medical treatment) and OCGA § 29-4-3 (order of preference for appointing a guardian) "mirror each other in that the list of individuals who have preference for appointment as guardian, and the list of individuals authorized and empowered to provide consent on behalf of a patient are substantially similar." However, the probate court failed to recognize that, although OCGA § 31-9-2 does include a prioritized list of those individuals who may consent to a medical procedure on another's behalf that is similar to the one included in OCGA § 29-4-3, the medical consent statute does not include any "last resort" mechanism equivalent to the one in OCGA § 29-4-3. Indeed, the medical consent statute points directly to OCGA § 29-4-18 as the statute under which to proceed if another suitable individual cannot be located. OCGA § 31-9-2(a.1).

presence of a Department representative at the hearing. Accordingly, we do not accept this factual assertion, nor the arguments that rely upon it. See *Arnsdorff v. Fortner*, 276 Ga. App. 1, 6(2) (622 SE2d 395) (2005) ("we do not consider factual assertions that are made in appellate briefs but are not established in the record, as briefs cannot be used to add evidence to the record") (physical precedent only).

Accordingly, given that the petition was brought under OCGA § 29-4-18, and in the absence of the Department's "willing[ness] and ab[ility] to become involved in the proposed medical consent ward's health care decisions and ... willing[ness] to exercise reasonable care, diligence, and prudence and to consent in good faith to medical or surgical treatment or procedures which the proposed medical consent ward would have wanted had he or she not been incapacitated," the Department was not an entity which the probate court was authorized to appoint as temporary medical consent guardian. OCGA § 29-4-18(i). We therefore reverse the probate court's order denying the Department's motion to vacate the appointment order.

*Judgment reversed. Rickman, P. J., and Davis, J., concur.*