EMPLOYERS REINSURANCE
CORPORATION,
Appellant,

v.

THRELKELD & COMPANY INSUR-
ANCE AGENCY d/b/a Threlkeld &
Company Insurance d/b/a Threlkeld
Financial Group, Appellee.

No. 12–03–00036–CV.

Court of Appeals of Texas,
Tyler.

Nov. 19, 2003.

Rehearing Overruled Feb. 5, 2004.

Richard Grainger, Tyler, for appellant.

David J. Bush, Ken W. Good, Kent Good & Anderson, Tyler, for appellee.

Panel consisted of WORTHEN, C.J. and GRIFFITH, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Employers Reinsurance Corporation ("Employers") appeals a summary judgment granted in favor of its insured, Threlkeld & Company Insurance Agency ("TCI"). The sole issue on appeal is whether the act of selling a viatical settlement constitutes the "business of insurance," thereby invoking coverage under TCI's professional liability policy. We reverse and remand.

### BACKGROUND

From approximately July 1, 1998 through October 1999, TCI served as a "marketing licensee" for First Financial Security of Texas ("First Financial"), a viatical settlement broker. A viatical settlement is defined as

an agreement that is solicited, negotiated, offered, entered into, delivered, or issued for delivery in this state under which a person pays anything of value that is:

(A) less than the expected death benefit of a policy insuring the life of an individual who has a catastrophic or life-threatening illness or condition; and

(B) paid in return for the policy owner's or certificate holder's assignment, transfer, bequest, devise, or sale of the death benefit under or ownership of the policy.

TEX. INS.CODE ANN. § 1111.001(3) (Vernon Supp.2003). The viatical settlement process works in the following fashion: an investor acquires an interest in a life insurance policy of a terminally ill person— typically an AIDS victim—at a discount of twenty to forty percent, depending on the insured's life expectancy. *Securities and Exch. Comm'n v. Life Partners, Inc.*, 87 F.3d 536, 537 (D.C.Cir.1996). When the insured dies, the investor receives the benefit of the insurance. *Id.* The investor's profit is the difference between the discounted purchase price paid to the insured and the death benefits collected from the insurer, less transaction costs, premiums paid, and other administrative expenses. *Id.*

Here, First Financial procured various viatical settlements from terminally ill people who owned life insurance. It began this process by making contact with the terminally ill person who owned the life insurance policy. After negotiating the purchase price of the life insurance with the terminally ill person, First Financial prepared the necessary documentation to establish the viatical settlement. Investors then responded to a series of solicitations, prepared by TCI, for investing in the viatical settlements to take advantage of the advertised fourteen to eighteen percent rate of return on the investment. Throughout the process, TCI was acting as an agent for First Financial in order to market the investments.

After these investors had paid for their share of the viatical settlement, it was soon discovered that the investment was worthless because the life insurance company who initially issued the policies cancelled them after it ascertained that the policies were fraudulently obtained. First Financial, although it had contracted with these investors to supply a replacement viatical settlement of the same value if such an event as this occurred, failed to make the

loss good. These investors then sued TCI, asserting claims for negligence, negligence per se, violations of the Texas Deceptive Trade Practices Act, fraud, fraud in the inducement, fraudulent concealment, joint enterprise, agency, breach of contract, and violations of the Texas Insurance Code.

TCI called upon Employers, the carrier of its professional liability insurance, to defend it against these claims. Employers defended TCI under a reservation of rights and settled some of the claims, subject to a right of reimbursement from TCI. TCI then filed suit against Employers, seeking a declaratory judgment that the claims by the investors were covered under its professional liability policy issued by Employers. The relevant policy section reads as follows:

### SECTION I

COVERAGE. The Corporation does hereby agree to pay on behalf of the Insured such loss in excess of the applicable deductible stated and within the limit of liability specified in the Declarations sustained by the Insured by reason of liability imposed by law for damages caused by:

(a) any negligent act, error or omission of the Insured or any person for whose acts the Insured is legally liable or,

(b) any claim for libel or slander or invasion of privacy against the Insured,

arising out of the conduct of the business of the Insured in rendering services for others as a general insurance agent, insurance agent or insurance broker, and including activities as an insurance consultant or notary public and any advertising activities, as respects claims first made against the Insured during the policy period.

The trial court granted a summary judgment for TCI, declaring that the coverage clause "included coverage for claims arising from viatical settlement agreements." Employers timely filed this appeal.

### IS THE ACT OF SELLING A VIATICAL SETTLEMENT CONSIDERED THE "BUSINESS OF INSURANCE?"

■ Employers presents one issue for our consideration: Does the act of selling a viatical settlement constitute the "business of insurance" as contemplated in the professional liability policy issued by Employers to TCI?

### Standard of Review

■ Summary judgment is proper only when a movant establishes there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). In reviewing a summary judgment, we indulge every reasonable inference in favor of the non-movant, assume all evidence favorable to the non-movant is true, and resolve any doubts in its favor. *Id.* Matters of statutory construction are questions of law for the court to decide. *Johnson v. City of Ft. Worth*, 774 S.W.2d 653, 656 (Tex.1989). When the controversy concerns the construction of an unambiguous written instrument, the construction is a matter of law for the court. *Sears, Roebuck and Co. v. Commercial Union Ins. Corp.*, 982 S.W.2d 151, 154 (Tex.App.-Houston [1st Dist.] 1998, no writ).

### Analysis

■ Insurance is a contract by which one party, for consideration, assumes particular risks on behalf of another party and promises to pay him a certain or ascertainable sum of money on the occurrence of a specified contingency. *Stewart Title*

*Guar. Co. v. Cheatham,* 764 S.W.2d 315, 318–319 (Tex.App.-Texarkana 1988, writ denied). In other words, the buyer of an insurance policy forgoes current consumption in order to protect against future risk. *See Life Partners, Inc.,* 87 F.3d at 541–42. Another essential characteristic of insurance is risk-pooling. *Id.*

None of these characteristics which define insurance are present in the viatical settlement agreement between First Financial and the individual investors. The terminally ill person, who was the insured, did not forgo current consumption; in fact, he opted for current consumption. This is diametrically opposed to the concept of insurance because in a viatical settlement, the insured immediately receives the protection for which he initially contracted, albeit at a discounted amount. Furthermore, any risk involved when the policy was purchased was removed as a result of the terminal illness and shortened life span. Finally, the individual investors did not risk-pool. There is no evidence in the record that the individuals who invested in the viatical settlements pooled the financial risk that the seller will live longer than expected. *Id.* Therefore, a viatical settlement is not an insurance policy, and the business of selling fractional interests in insurance policies is no part of the "business of insurance." *Id.*

We can find no federal or state authority which holds or mandates that the selling of viatical settlements constitutes "the business of insurance." However, TCI contends that its activities in soliciting the individual investors in its capacity as an agent for First Financial constituted the "business of insurance" as defined in the Texas Insurance Code. *See* Tex. Ins.Code Ann. § 101.051 (Vernon Supp.2003).

First, TCI states that its solicitation of the individual investors to purchase the viatical settlement agreement from First Financial was an act constituting the "business of insurance" in Texas because it was "receiving and collecting consideration for insurance, including a premium." *See* Tex. Ins.Code Ann. § 101.051(b)(4)(A). We disagree. In this process, the life insurance company sold the terminally ill person the life insurance policy and was therefore collecting or receiving the consideration for that sale. First Financial stepped into the terminally ill person's shoes to pay the premiums, and those premiums ultimately went to the life insurance company. First Financial received a commission from the total amount invested by the investors as a result of structuring the viatical settlement and did not receive premium payments from them. Therefore, First Financial's payment of premiums to the life insurance company did not result in TCI's "receiving or collecting consideration for insurance" as contemplated by the Texas Insurance Code.

TCI also contends that it was "representing an insurer or assisting an insurer" when it facilitated the delivery of the underlying insurance policy as part of the viatical settlement agreement between First Financial and the individual investors. *See* Tex. Ins.Code Ann. § 101.051(b)(6)(D) (Vernon Supp.2003). Again, we disagree. The commissioner of insurance for the Texas Department of Insurance herself described companies such as First Financial that offer viatical settlement agreements as "non-insurance entities." Op. Tex. Att'y Gen. No. DM–314, 1995 WL 14127 (request for attorney general opinion characterizes such entities as "non-insurance entities"). The insurance commissioner's expertise in the insurance trade is unquestioned as the department she directed was "created to regulate 'the business of insurance' in this state." *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 485 (Tex.

1998). The insurance commissioner does not consider First Financial to be an insurer; therefore, we also decline TCI's invitation to treat First Financial as an insurer.

TCI finally contends that it was engaged in the "business of insurance" in soliciting the individual investors to purchase the viatical settlement agreement because that act was "recognized as constituting insurance business within the meaning of statutes relating to insurance." *See* TEX. INS. CODE ANN. § 101.051(b)(8) (Vernon Supp. 2003). TCI contends that the "business of insurance" includes the sale and marketing of viatical settlements because the Texas Insurance Code provides for the regulation of viatical settlements by the commissioner of insurance. *See* TEX. INS.CODE art. 3.50–6A § 2(b) (Vernon 2001). Following the passage of article 3.50–6A in 1993, the insurance commissioner for the State of Texas asked the office of the attorney general whether this section allowed her to "license non-insurance entities that offer viatical settlement agreements." Op. Tex. Att'y Gen. No. DM–314, 1995 WL 14127. The Texas Attorney General determined that article 3.50–6A of the Insurance Code was null and void because it violated the separation of powers required by article II, section 1 of the Texas Constitution. *Id.* Furthermore, that provision was repealed by the legislature in 2001. *See* Acts 2001, 77th Leg., R.S., ch. 1419, § 31(a). Based upon this history of article 3.50–6A of the Insurance Code, there is nothing indicating that selling viatical settlement agreements is part of the "business of insurance."

The reasoning underlying the argument that the selling of viatical settlements is the "business of insurance" because it is defined and subject to regulations contained in the Texas Insurance Code was also rejected by the *Life Partners* court, when it stated that

[t]o the extent that regulation of insurance companies is prompted by concern over their ability to pay benefits when due, that concern is simply not applicable to investors in a viatical settlement because the insured receives payment from the investors at the outset; thereafter the investor has no further liability to the insured.

*Life Partners, Inc.,* 87 F.3d at 541–42. We agree with this conclusion and hold that when TCI was representing and assisting First Financial in the sale of viatical settlements to the individual investors, it was not engaged in the "business of insurance" as defined by the Texas Insurance Code.

### *COVERAGE CLAUSE*

 TCI also contends that the coverage clause of its professional liability policy from Employers is ambiguous; therefore, it should be construed in favor of coverage for the selling of the viatical settlements. It is a fundamental rule of law that insurance policies are contracts and as such are governed by rules of construction which are applicable to contracts generally. *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law. *Columbia Gas Transmission. Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996). A contract is ambiguous when its meaning is uncertain or it is reasonably susceptible to more than one meaning. *Cadle Co. v. Collin Creek Phase II Assocs., Ltd.,* 998 S.W.2d 718, 723 (Tex.App.-Texarkana 1999, no pet.). TCI contends that it is unclear whether viatical settlement agreements are part of the business of insurance and therefore parol evidence should be considered in determining whether its actions on behalf of First Financial were covered by its professional liability policy. We do not agree.

■ For the reasons shown above, viatical settlement agreements are not part of the "business of insurance." The coverage clause of TCI's policy with Employers describes all of TCI's covered errors and omissions in the context of its insurance business "in rendering services for others as a general insurance agent, insurance agent or insurance broker, and including activities as an insurance consultant or notary public and any advertising activities." Performing acts on behalf of a non-insurance entity such as First Financial clearly does not trigger the coverage clause of this policy. Extrinsic evidence is inadmissible to contradict or vary the meaning of the unambiguous language of the written contract. *National Union Fire Ins. Co. v. CBI Industries, Inc.*, 907 S.W.2d 517, 521 (Tex.1995). Therefore, we will consider only the coverage clause of TCI's insurance policy in resolving the issue.

We hold that TCI's act of selling a viatical settlement on behalf of First Financial did not constitute the "business of insurance" nor was it an act contemplated by its professional liability policy with Employers. Therefore, TCI was not entitled to summary judgment as a matter of law. Employers' sole issue is sustained.

### Conclusion

Having held that the trial court committed reversible error by declaring that the professional liability policy issued by Employers to TCI included coverage for claims arising from the sale of viatical settlement agreements, we *reverse* the summary judgment of the trial court and *remand* the cause for proceedings in accordance with this opinion.