A04A1818. ALLEN et al. v. JONES.
(604 SE2d 644)

PHIPPS, Judge.

Grady Allen, Don Nell Allen, and Katherine Adams brought a civil Georgia Racketeer Influenced and Corrupt Organizations Act

---

[3] OCGA § 16-7-24 (a).

[4] OCGA § 16-11-37 (a).

(RICO) action against Accelerated Benefits Corporation (ABC), its president Jess LaMonda, and its agent Douglas Jones, based on their 1998 purchases from ABC of investments in viatical settlement contracts.[1] They alleged that ABC, LaMonda, and Jones had engaged in a pattern of racketeering activity by preparing and distributing fraudulent promotional materials purporting to guarantee specific returns on investments in the viatical contracts. They alleged two predicate acts in furtherance of the scheme: mail fraud and the sale of unregistered securities by an unregistered dealer.

Jones sought summary judgment on a number of grounds, including that viatical contracts were not considered securities before July 1, 2002, and therefore were not governed by the Georgia Securities Act of 1973.[2] The trial court granted summary judgment on that ground, without considering Jones's other arguments. We find that the court erred in granting summary judgment on that ground, but we affirm the grant of summary judgment to Jones on a ground presented to, but not decided by, the trial court — that there was no evidence that Jones had knowledge of any fraud.

1. Under the Georgia RICO Act,

> [i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money[; and] [i]t is unlawful for any person employed by or associated with [such] enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.[3]

A "pattern" means engaging in at least two incidents of racketeering activity, which is defined as the commission of a crime in any of 37 specified categories of offenses.[4]

The complaint alleged that the viatical contracts sold by ABC were unregistered securities sold by an unregistered agent, in violation of the Georgia Securities Act of 1973. In his summary judgment

---

[1] According to the complaint, the viatical settlement contracts were agreements "through which purchasers contract for the right to receive from ABC a sum of money equal to a designated percentage of the death benefits payable from one or more life insurance policies on the life of one or more persons (known as viators) who are said to be terminally ill."

[2] OCGA § 10-5-1 et seq.

[3] OCGA § 16-14-4 (a), (b).

[4] See *Jordan v. Tri County Ag*, 248 Ga. App. 661, 666 (5) (546 SE2d 528) (2001); see also OCGA § 16-14-3 (9).

motion, Jones argued that in 1998, when the contracts were purchased, they did not fall within the statutory definition of "security" and therefore were not subject to registration requirements. The trial court agreed with Jones. We, however, cannot agree.

Before July 1, 2002, the act defined "security" as

> any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of indebtedness, investment certificate, certificate of interest or participation in any profit-sharing agreement, certificate of interest in oil, gas, or other mineral rights, collateral trust certificates, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, limited partnership interest, or beneficial interest in profits or earnings, or any other instrument commonly known as a security. . . . *The term "investment contract" shall include but is not limited to an investment which holds out the possibility of return on risk capital even though the investor's efforts are necessary to receive such return if:*
>
> *(A) Such return is dependent upon essential managerial or sales efforts of the issuer or its affiliates; and*
>
> *(B) One of the inducements to invest is the promise of promotional or sales efforts of the issuer or its affiliates in the investor's behalf; and*
>
> *(C) The investor shall thereby acquire the right to earn a commission or other compensation from sales of rights to sell goods, services, or other investment contracts of the issuer or its affiliates.*[5]

Effective July 1, 2002, the General Assembly amended the act to include the term "viatical investment" in the list of instruments that constitute securities.[6]

The act's list of securities is illustrative rather than exclusive. It contains the broad term "investment contract," which "includes *but is not limited to*" investments meeting certain defined criteria. Moreover, when determining whether an instrument falls within the

---

[5] (Emphasis supplied.) Former OCGA § 10-5-2 (a) (26).

[6] See Notes to OCGA § 10-5-2 (a) (26).

definition of a "security," we look not to its label, but to its characteristics and "the underlying economic reality."[7] We have held that an instrument is a security if it is "(1) an investment in a common venture; (2) premised on a reasonable expectation of profits; (3) to be derived from the entrepreneurial or managerial efforts of others."[8] According to the allegations in the complaint, the viatical contracts offered by ABC satisfied these criteria. Jones has presented no evidence to show otherwise.

Jones points out that another provision of the securities act bars retroactive application of the act's provisions:

> Any criminal proceeding or civil proceeding . . . instituted under this chapter shall be governed by the provisions of this chapter as such provisions existed in full force and effect on the date of the alleged commission of the underlying facts or circumstances which constitutes evidence of the commission of a crime or violation of this chapter, notwithstanding any subsequent amendment to this chapter, unless the General Assembly shall specifically declare otherwise. . . .[9]

But we do not hold that the 2002 amendment should be applied retroactively. Rather, we conclude that even before the amendment, viatical contracts could qualify as "securities" under the act.

Jones also argues that the legislature's amendment of the act to specify "viatical investments" shows that they did not previously fall within the act's scope. The Court of Appeals of Indiana recently rejected this argument in *Security Trust Corp. v. Estate of Fisher*,[10] a case remarkably like this one. The court addressed the same question we face here: whether an earlier version of the state securities law that did not specifically list viatical contracts nonetheless included them, where the law was later amended to specifically include them. The court answered the question in the affirmative.

Like the definition of "security" in the Georgia act, the Indiana law contains an illustrative list of instruments, including "investment contract."[11] In 2000, that list was amended to include viatical

---

[7] (Citation and punctuation omitted.) *Rasch v. State*, 260 Ga. App. 379, 383 (1) (579 SE2d 817) (2003).

[8] (Citations and punctuation omitted.) Id. at 384 (1).

[9] OCGA § 10-5-23.

[10] 797 NE2d 789 (Ind. Ct. App. 2004).

[11] Id. at 792.

settlement contracts.[12] The court concluded that a viatical contract sold before the amendment could qualify as a security. To hold otherwise, the court wrote,

> would . . . render that part of the statute defining a security as "an investment contract" nearly meaningless, which is, contrary to our principles of statutory construction. Further, interpreting the Act [to exclude viatical contracts before the amendment] would be contrary to the Act's purpose of protecting "the public by preventing dishonest promoters from selling financial schemes to unwary investors who have little or no knowledge of the realistic likelihood of the success of their investments." [Cit.] Accordingly, we conclude that the . . . amendment to the Act did not have the effect of changing the law, but merely clarified the existing law.[13]

We are persuaded by the reasoning of the Indiana court, and we reach the same conclusion here: before July 1, 2002, a viatical contract could qualify as a security under Georgia law. Accordingly, we reject the trial court's ruling that Jones was entitled to summary judgment because the Allens and Adams could not prove the predicate RICO act of selling unregistered securities by an unregistered agent.

2. Because we will affirm a grant of summary judgment if it is right for any reason,[14] we nevertheless conclude that summary judgment was appropriate for another reason argued in Jones's summary judgment motion: that he had no knowledge of any fraud.

The complaint alleged that, as ABC's servicing agent, Jones distributed fraudulent promotional materials and collected money from the Allens and Adams for the purchase of viatical contracts. It further alleged that these actions showed his participation in a pattern of racketeering activity in violation of civil RICO laws.

In support of his summary judgment motion, Jones submitted an affidavit stating that he played no role in the management of ABC, but merely sold viatical investments using promotional material that ABC provided. He averred that he "had no participation in the preparation of that information and in fact relied in good faith upon the truthfulness of the statements contained in that material." Finally, he stated:

---

[12] Id.

[13] Id. at 795 (I).

[14] *Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001).

Had I had any suggestion or even suspicion that the promotional material contained any misinformation I would not have used it in my sales efforts. In fact, if I had maintained any suspicion that anyone was being misled by any agent of [ABC], I would have had no association whatsoever with that company.

The Allens and Adams submitted no evidence to controvert Jones's affidavit.

To be liable under RICO law for participation in fraud, a defendant must knowingly and intentionally participate in the fraud.[15] In the absence of any evidence that Jones *knowingly* distributed false or misleading information, he cannot be liable under the Georgia RICO Act.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 15, 2004 — CERT. APPLIED FOR.

*Gerald W. Brown*, for appellants.
*J. Hue Henry*, for appellee.

---

[15] See *Jordan*, supra (RICO claim failed where evidence showed that inappropriate charges to plaintiffs resulted from defendant's error, not from intentional fraud).